**Reginaldo P. LOPEZ, Plaintiff-Appellant,**

v.

**PAN AM WORLD SERVICES, INC., Defendant-Appellee.**

No. 86–3188.

United States Court of Appeals, Eleventh Circuit.

April 3, 1987.

Rehearing and Rehearing En Banc Denied May 12, 1987.

Donald M. Papy, Miami, Fla., for plaintiff-appellant.

Joseph J. Mancini, Richeson & Brown, James G. Brown, Orlando, Fla., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

The issue in this appeal is whether the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, prior to its amendment in 1984, applies to the application for employment by an American citizen to an American corporation, where the place of employment would be in a foreign country. The district court held that the ADEA did not have extraterritorial effect, thereby barring the appellant's age discrimination claim under the ADEA. We agree.

Appellant Reginaldo P. Lopez, a fifty-nine year old United States citizen, applied in 1982 for a position with Pan Am World Services, Inc. (Pan Am), a Florida corporation. Pan Am then decided to fly appellant from Florida to Greenwich, Connecticut for an interview with several Pan Am employees. In that interview, the Pan Am employees told Lopez that he was qualified for a warehouse superintendent position in Caracas, Venezuela.[1] Subsequently, E.E. Wilcoxen, a Pan Am employment services manager, withdrew Pan Am's employment offer because of appellant's age. In a followup letter dated march 1, 1982, Wilcoxen stated: "[i]t is regrettable and unfortunate that we must withdraw our offer of em-

---

1. According to Peter Dugre, general counsel for Pan Am, appellant was being considered for a supervisor position at the Airemar project, the largest warehouse in Venezuela. The appellant stated in his deposition that the job in Venezuela would be for three years, and then a Venezuelan would take over the position, resulting in appellant's reassignment to the United States.

ployment; however, our client in Caracas has mandated an age requirement which you exceed." Later Pan Am hired two younger men to fill the position Pan Am offered to appellant.

In February 1985, appellant sued Pan Am for violating the Age Discrimination in Employment Act (ADEA). Pan Am then moved for summary judgment asserting that the court lacked subject matter jurisdiction because the ADEA, prior to its amendment in 1984, was not effective outside of the United States. The district court granted Pan Am's motion, holding that the ADEA did not protect appellant because his work station would be located in Venezuela. We affirm.

Section 626(b) of the ADEA incorporates by reference [2] the extraterritorial exemption contained in § 13(f) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 213(f). That exemption states that "the provisions ... shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country." FLSA, 29 U.S.C. § 213(f) (1982). To nullify this exemption, Congress in 1984 passed an amendment to the ADEA which extended the ADEA's protection to United States citizens employed abroad by American corporations or their subsidiaries, except when application of the ADEA would violate the law of the foreign country where the citizen was employed.[3] Older Americans Act Amendments of 1984, Pub.L. No. 98–459,

§ 802(b)(1), (b)(2), 98 Stat. 1767, 1792 (codified as amended at 29 U.S.C. § 623(f)(1), (g)(1)). Congress did not indicate that the amendment would apply retroactively.[4]

In this case we must interpret the ADEA's extraterritorial exemption prior to its amendment in 1984. Six circuits have held that the ADEA prior to 1984 did not protect American citizens employed in foreign countries. *S.F. DeYoreo v. Bell Helicopter Textron, Inc.,* 785 F.2d 1282 (5th Cir.1986); *Ralis v. RFE/RL, Inc.,* 770 F.2d 1121 (D.C.Cir.1985); *Pfeiffer v. Wm. Wrigley Junior Co.,* 755 F.2d 554 (7th Cir.1985); *Zahourek v. Arthur Young and Co.,* 750 F.2d 827 (10th Cir.1984); *Thomas v. Brown and Root, Inc.,* 745 F.2d 279 (4th Cir.1984); *Cleary v. U.S. Lines, Inc.,* 728 F.2d 607 (3d Cir.1984). In all of the circuit cases, an American employee was working overseas when his corporation terminated him because of his age. Here the appellant is an applicant, not an employee, who was rejected by a United States corporation for a job in Venezuela. According to the appellant, all of the acts relevant to the age discrimination charge occurred in the United States, so the extraterritorial exemption of the ADEA should not apply.

Appellant emphasizes that in this case a United States corporation decided in the United States not to hire a United States citizen. Appellant disregards the fact that his job would have been in Venezuela. To avoid the ADEA's extraterritorial exemp-

---

**2.** The relevant part of 29 U.S.C. § 626(b) provides the following:

> The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. ADEA, 29 U.S.C. § 626(b).

> Subsection (d) of § 216 states the following: [n]o employer shall be subject to any liability or punishment under this Act ... with respect to work heretofore or hereafter performed in a workplace to which the exemption in section 213(f) of this title is applicable, Fair Labor Standards Act, 29 U.S.C. § 216(d).

**3.** The legislative history of the 1984 amendment does not specify Congress' reasons for amending the statute. *See* H.R.Rep. No. 1037, 98th Cong., 2d Sess. 49 (1984), *reprinted in* 1984 U.S.Code

Cong. & Admin.News 2974, 3018, 3037; 130 Cong.Rec. § 11862, § 11864 (daily ed. Sept. 26, 1984). In *S.F. DeYoreo v. Bell Helicopter Textron, Inc.,* 785 F.2d 1282 (5th Cir.1986), the Fifth Circuit concluded that the amendment must have added something that was not already there. "If Congress found it necessary to extend the coverage of the ADEA to foreign-employed United States citizens, the statute's reach must not originally have gone that far." *Id.* at 1283. We agree that the 1984 amendment changed the law, not just clarified it.

**4.** Appellant Lopez does not contend on appeal that the amendment applies retroactively, but other circuits that have considered the issue concluded that there is no retroactive application. *See Ralis v. RFE/RL, Inc.,* 770 F.2d 1121 (D.C.Cir.1985); *Pfeiffer v. Wm. Wrigley, Junior Co.,* 755 F.2d 554, 559 (7th Cir.1985).

tion, appellant attempts to distinguish between the place of hiring and the place of termination. Such a distinction appears to be a restatement of the "place of decision" theory. Under this theory, the place the personnel decision is made determines whether the ADEA is applicable. The Third Circuit in *Cleary* dismissed this approach, noting that the language of § 213(f) looks to the place of employment, not the place where the decision was made. 728 F.2d 607, 610 n. 6. Furthermore, a district court in Wisconsin characterized the location of the work station as the critical coverage factor. "It is not the place where the plaintiff is hired, however, nor even the place where the termination decision is made that determines the applicability of the ADEA ... Instead, it is the location of the 'work station' that is determinative." *Wolf v. J.I. Case Co.*, 617 F.Supp. 858, 863 (E.D.Wisc.1985).

Based on the plain language of § 13(f) of FLSA, we agree that the location of the work station should be the controlling factor for discerning the ADEA's extraterritorial effect. The work station for appellant's job would have been Caracas, Venezuela. Therefore, the ADEA, prior to its amendment in 1984, does not protect the appellant from age discrimination. We regret that appellant does not have a cause of action because Pan Am's hiring decision based on age occurred too early. Nevertheless, we must apply the law as it stood in 1982.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

**HATCHETT, Circuit Judge, dissenting:**

I respectfully dissent. In 1967, Congress enacted the ADEA "[t]o promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b).[1] The ADEA prohibits denial of employment by an employer solely on the basis of an applicant's age. 29 U.S.C. § 623(a).[2]

Pan Am openly concedes denial of employment to Lopez because of an "imposed age requirement." Absent a legal justification for denying Lopez employment, Pan Am clearly violated the dictates of the ADEA. 29 U.S.C. § 623(a). Pan Am contends that 29 U.S.C. § 626(b), by declaring all acts prohibited under the ADEA as prohibited acts under 29 U.S.C. § 215 of the Fair Labor Standards Act (FLSA), incorporates an exemption contained in 29 U.S.C. § 213(f) of the FLSA.[3] Section 213(f), however, specifically cites those provisions, sections 206, 207, 211, and 212, which are afforded the exemption. Section 215 is not included as a section afforded the FLSA exemption. Thus, no exemption applies to actions arising under the ADEA.

The purpose of precluding the extraterritorial application of the ADEA is to avoid possible conflict with the laws of foreign nations. *Pheiffer v. Wm. Wrigley, Jr. Company*, 755 F.2d 554 (7th Cir.1985); *Cleary v. U.S. Lines, Inc.*, 728 F.2d 607 (3d

---

1. Section 621(b) provides:
   (b) It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

2. Section 623(a) provides:
   (a) Employer practices
   It shall be unlawful for an employer—
   (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

   (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
   (3) to reduce the wage rate of any employee in order to comply with this chapter.

3. Section 213(f) provides, in relevant part:
   (f) The provisions of sections 206, 207, 211 and 212 of this title shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a foreign country or within territory under the jurisdiction of the United States. . . .

Cir.1984); *Zahoruek v. Arthur Young Co.,* 750 F.2d 827 (10th Cir.1984). The issue of extraterritorial application of the ADEA is not at issue in this case because Lopez never became an employee working in a foreign country, as defined in 29 U.S.C. § 630. Thus, the possibility of the ADEA conflicting with foreign laws never arose. *Wolf v. J.I. Case Co.,* 617 F.Supp. 858 (E.D. Wis.1985).

The majority seems to miss the point that nothing extra-territorial is involved in this case. This case involves a United States corporation and a United States citizen, where the application, interview, and processing of the application all occurred in the United States. Furthermore, the proposed employment agreement stated that the "Home Base Office" for all payroll actions, including hiring would be in the United States. The majority, in effect, holds that prior to the 1984 amendment the ADEA did not apply to United States employers acting in the United States if any foreign involvement was anticipated during the course of the employee's tenure. In 1984, Congress amended the ADEA in order to clarify that the "term 'employee' includes an individual who is a citizen of the United States employed by an employer in a work place in a foreign country." 29 U.S.C. § 630(f). I can only conclude that the law prior to 1984 required American employers doing business in the United States to conduct their affairs in accordance with the laws of the United States without regard to possible future consequences of their actions in a foreign country.